FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

2016 OCT 21  AM 11: 37

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

| | |
|---|---|
| KIRA ZANDER, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>L BRANDS, INC.,<br><br>         Defendant. | Case No.<br><br>3: 16 CV 1328-J-34JRK<br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kira Zander ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, alleges upon personal knowledge as to herself, and upon information and belief as to all other matters, based upon the investigation made by and through her attorneys, as follows:

### SUMMARY OF ACTION

1.  This is a consumer protection class action for injunctive relief and economic damages based on material misrepresentations and omissions committed by defendant L Brands, Inc. ("L Brands" or "Defendant") regarding one of its air freshener products marketed, advertised, and/or sold during the applicable limitations periods for each claim (the "Class Period").[1]

2.  Specifically, the air freshener product at issue is the Car Scentportable, which is used by inserting a Scentportable fragrance refill (the "Fragrance Refill") into a Scentportable holder (the "Scentportable Holder") (together, the Fragrance Refill and the Scentportable Holder

---

[1] While many customers have also complained about negative side effects to their health, Plaintiff is not making any claims for personal injuries in this Complaint; rather, this case is based solely on Defendant's misrepresentations and omissions regarding the products purchased by Plaintiff and the other members of the Classes (as defined herein). All potential claims for personal injury relief by Plaintiff and other members of the Classes are preserved and outside the scope of the damages sought in this litigation.

are referred to as the "Scentportable" or the "Product"). The Product is marketed and sold by Bath & Body Works Direct, Inc. ("Bath & Body Works"), one of the brands owned by Defendant.

3. The Fragrance Refills leak and melt easily, causing significant damage to almost all surfaces with which the unidentified substance they contain comes into contact. Plaintiff and the other members of the Classes (as defined below) who purchased the Product suffered economic damages in a similar manner because Defendant fails to disclose the propensity of the Fragrance Refills to leak or melt, thus releasing the harsh chemicals contained therein and causing damage to the areas in which the Product is meant to be used. Moreover, the ingredients contained in the Fragrance Refills are not disclosed – on the label or anywhere else.

4. Plaintiff contends that the Product does not work as impliedly warranted and, as a result, Defendant misled consumers into purchasing the Product under deceptive circumstances. The Product is sold pursuant to unfair and unconscionable trade practices because it offends public policy and is economically substantially injurious to consumers.

5. Neither Plaintiff nor similarly situated consumers bargained for a Product that causes significant damage to their property in exchange for their payment of the purchase price. Had Plaintiff and the Class known that the Product would cause such effects, they would not have purchased the Product or they would have paid less for the Product.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and some members of the Classes (as defined below) are citizens of a different state than Defendant.

2

7.     This Court has personal jurisdiction over Defendant because, *inter alia*, during the Class Period, Defendant distributed, marketed, advertised, and sold the Product throughout the State of Florida and in this judicial district, and Plaintiff purchased Defendant's Product in this judicial district.

8.     Venue is proper in this judicial district because Plaintiff resides in this district, Plaintiff's claims arise out of Defendant's conduct within the State of Florida, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## THE PARTIES

9.     Plaintiff Kira Zander is an adult individual who resides in Jacksonville, Florida. Plaintiff purchased Scentportables from a Bath & Body Works store at St. Johns Town Center in Jacksonville, Florida, which is located in this judicial district, in or about June 2016.  One of these Scentportables caused significant damage to Plaintiff's vehicle.

10.     Defendant is a Delaware corporation with its principal executive offices located in Columbus, Ohio.  L Brands is a specialty retailer focused on women's intimate and other apparel, personal care, and beauty, and sells its merchandise primarily through company-owned specialty retail stores in the United States, Canada, and the United Kingdom, as well as through its brands' websites.  Defendant's primary brands are Victoria's Secret, Henri Bendel, and Bath & Body Works.  The Product at issue in this Complaint is marketed and sold by Bath & Body Works, on behalf of Defendant.

## SUBSTANTIVE ALLEGATIONS

11.     After focusing on women's apparel for nearly 30 years, Defendant opened the first Bath & Body Works store in September of 1990.  Since then, Bath & Body Works has created,

marketed, and sold various scented products – ranging from fragrant body lotions to 3-wick

candles – and has become one of the world's leading specialty retailers selling such products.

      12.    In addition to scented candles, Bath & Body Works' home fragrance collection

includes room sprays, plug-in wallflowers, and Scentportables.

      13.    The Scentportable Holder that houses the Fragrance Refill, an example of which is

depicted below, comes in a large variety of designs – from simple gray rubber to whimsical,

glitter-covered squirrels – and pairs with Fragrance Refills in a plethora of scents.



14.     The Scentportable Holders that house the Fragrance Refills retail for anywhere from $5.50 to $7.50 each, and the Fragrance Refills retail for $3.50 each.

15.     As shown below, Scentportables state on the label that they are designed to be placed in "all the small spaces of your life," and "virtually anywhere," including your car.  For the car, they are designed to be attached to the air vents or sun visors in consumers' vehicles. Scentportables serve the purpose of disseminating a consumer's favorite scents into the air quickly and efficiently.[2]

16.     Although Defendant touts its commitment to "providing high-quality, safe and effective products," and represents that it selects its vendors "based on their ability and commitment to meet [L Brands'] quality and safety standards,"[3] the use of the Product causes serious property damage – in a car, ranging from stripping material from car seats to causing such significant damage that consumers' dashboards need to be completely replaced – the risk of which is not adequately disclosed on the package.

17.     Defendant fails to adequately warn consumers of the propensity for the Fragrance Refills to leak or melt, thus releasing the harsh chemicals contained therein and damaging consumers' personal property.  Defendant also fails to disclose the ingredients in the Fragrance Refills.

**Unexpected Damage to Plaintiff's Vehicle**

18.     Plaintiff purchased several Scentportables from Bath & Body Works in June 2016.  In July 2016, a Scentportable, which Plaintiff had properly attached to one of the vents in

---

[2] *See, e.g., Fuzzy Happy Penguin Scentportable Holder*, Bath & Body Works, http://www.bathandbodyworks.com/product/index.jsp?productId=103646816&cp=12586994.12936197.4 147330 (last visited Oct. 18, 2016).

[3] *See L Brands Responsibility – Products Overview*, L Brands, Inc., https://www.lb.com/responsibility/product-information/products (last visited Oct. 18, 2016).

her car, melted and leaked onto the console of her vehicle. The console, which was corroded by the liquid that leaked from the Scentportable, will have to be replaced at significant expense to Plaintiff.

19. Nowhere on the Product's packaging did Defendant disclose the significant risk of its melting and causing damage to property, or the specific harsh chemicals that are contained as ingredients therein.

20. Had Plaintiff known of the risk of damage to her property, she would not have purchased the Scentportable at all, or would have paid less for it. Defendant failed to disclose the risks of using the Product and the ingredients therein, which caused Plaintiff and members of the Classes to purchase a Product that they would not have purchased if the Product adequately warned or informed consumers on the labeling or packaging of the Product that the use of the Product could cause substantial damage to consumers' personal property.

**The Product's False and Misleading Labels**

21. While Defendant warns that the Fragrance Refills contain liquids which can irritate an individual's eyes, and that the fragrance oil should not be swallowed, nowhere on either the Scentportable Holder or the Fragrance Refill with which it is to be used does it state that the liquids can leak out of the Product – even when it is being used as directed.

22. For example, as can be seen in the pictures of the Fragrance Refill below, the only warning on the front of the Fragrance Refill is "CAUTION: EYE IRRITANT." Consumers are then directed to read the inside panels "carefully." The inside of the label identifies a "risk of eye irritation." It further directs consumers to call a physician or Poison Control Center immediately if any of the fragrance oil is ingested. The label is devoid of any warnings

6

regarding the risk that the Fragrance Refill will melt or leak or whether the liquids in the Fragrance Refill pose any harm to personal property.



23.    As demonstrated by the picture below, the Fragrance Refill label contains a combination of words and pictures. The pictures, when combined with the words, convey to the user that the Product can be used in "all the small spaces of your life" safely and without concern.    The pictures offer varied examples of appropriate places and proper uses of the Product—to include a person's closet, car, gym bag, school locker, home dresser, and garbage can.    The images and the words combine to provide reassurance of the inherent safety of the Product for use in a variety of locations.    At no time does Defendant provide any instruction about limited proper uses or warning about explicitly improper uses (apart from the "eye irritant" and danger "if swallowed" warnings).    In other words, Plaintiff here and consumers in general are told (with words and pictures) that ordinary household use of the Product carries no risk to property.



Spread continuous scent and lasting freshness into all the small spaces of your life—without a plug, battery or flame.

Use only with SCENTPORTABLE fragrance units. Fragrance discs are designed to last 4-6 weeks, but may vary at elevated temperatures.

Directions for use:
1. Gently open top cover of your SCENTPORTABLE unit.
2. Remove and discard used fragrance disc.
3. Peel off foil seal from new fragrance disc and place in tray. Take care not to touch the fragrance oil membrane.
4. Replace top cover.
5. Place unit virtually anywhere and enjoy weeks of freshness.

**CAUTION: EYE IRRITANT.** Contact with liquid may cause eye irritation. If eye contact occurs, flush with water for 15 minutes. If irritation persists, consult a physician. IF SWALLOWED, do not induce vomiting

24.     The label also mentions that the Fragrance Refills are designed to last 4-6 weeks, and notes that the amount of time the fragrance will last may vary at elevated temperatures. The label does not warn, however, that the Fragrance Refill may melt or explode when, for example, they are used in consumers' vehicles at elevated temperatures.

25.     Moreover, the Product's labels do not contain a list of ingredients, or even warn that any of the ingredients contained in the Fragrance Refill can be destructive to personal property. While the exact measurements of the ingredients of a fragrance oil may be protected as a company's proprietary information, Plaintiff is not suggesting that the Company should disclose the precise formula for its Fragrance Refill. However, because the Company has superior knowledge about its Products, it should provide consumers with essential information as

to any ingredients which may cause harm to property when used as promoted. Some air fresheners may contain chemicals known as phthalates, which have been shown to be extremely toxic. It is not clear whether the Fragrance Refills here contain volatile chemicals or solvents but, without any information provided on the Product's labels regarding the ingredients, consumers cannot adequately assess the risk of using the Product.

26.     As a result of the false and misleading information and omissions of important information on the Product's labels, reasonable consumers have no reason to expect that the Fragrance Refills can or will melt or leak, thus causing significant damage to consumers' vehicles or other personal property. Had Plaintiff and the other members of the Classes been properly warned of the risks of using the Product, they would have paid less for the Product or would not have purchased it at all.

**Consumer Complaints**

27.     Given the material information that Defendant misrepresented and failed to disclose on the Product's packaging, consumers have been defrauded into purchasing air fresheners that they reasonably expect will merely emit pleasant fragrances. Instead, many consumers have learned – only after the Product caused substantial damage to their personal property – that the Fragrance Refills have a propensity to melt or leak.

28.     The following complaints – which come from consumers who live in a variety of locations, who have purchased Scentportables over the course of several years – have been selected from among the dozens of complaints reported by consumers who have used the Scentportables, in order to demonstrate the type of damage that Defendants' Product causes:

- I purchased the air freshener that clips onto the air vent. I had it in my car for a few days when it began to leak and run down the dash underneath the vent. It looks like acid burns. Whatever is in those things needs to be removed.[4]

- Monday 10/14/13, I purchased a refill for my cute little ladybug car air freshener and put it in that day. On 10/22/13 I drove home from work with no issues. I left my car for 5 minutes while I ran into my babysitter's house to pickup [sic] my kids. I came back to my car and found what looked like a pile of brown stuff on my driver's seat. I have tan leather seats. I had no idea what it was, so I smelled it. No scent. I wiped it up with a napkin and headed on my way since I was in a hurry. It was 71 degrees on this day. Later, I realized my visor-clip air freshener had leaked onto my seat and ATE THROUGH the leather on my car seat... Needless to say, I am very unhappy. There was absolutely NO WARNING whatsoever that this could happen. I used the product exactly as it was intended. I have no idea what it will cost to repair my leather seat, but I will be finding out soon.[5]

- For some reason Bath & Body Works' site won't let me write a review on the Scentportables. I do NOT recommend Scentportables if you live in a hot area. I live in Southern California and it isn't always hot here BUT when it is hot my Scentportable will melt through and stain my seats. I bought multiple stain removers but the stain from the Scentportable would not come off. My friend's Scentportable melted and burned her dashboard. IS THIS EVEN SAFE?.[6]

- Was given portable scents for my new car that was all of 24 hours old. My grandchildren bought them as a gift. Overnight [it] dripped on my dash and bubbled up and left permanent damage. At the time could not figure out what caused it. I moved the clip to the driver's side and it had dripped on my steering wheel eating away the finish on that. I have to return product and now they have their company lawyers contacting me. Went to dealership to get replacement cost for the dash, and steering wheel which has come to 3200.00 in my new car that isn't even a week old – that's just parts, not labor and 2 days to keep the car... Do not purchase their car scents... What is in this stuff? I have used oils from cooking oils to scented oils and this is bizarre. What about young children that may get ahold of this? If it can destroy car paint, plastic and the vinyl on your dashboard what will it do to a human's skin, especially a child's? My rating is a

---

[4] *Dec. 20, 2015 Complaint from Jackie of Soperton, GA*, ConsumerAffairs, https://www.consumeraffairs.com/retail/bath_body.html?page=2 (last visited Oct. 18, 2016).

[5] *Oct. 26, 2013 Complaint from [S]tephanie of Vancouver, WA*, ConsumerAffairs, https://www.consumeraffairs.com/retail/bath_body.html?page=6 (last visited Oct. 18, 2016).

[6] *Apr. 24, 2016 Complaint from Tina of Anaheim, CA*, ConsumerAffairs, https://www.consumeraffairs.com/retail/bath_body.html (last visited Oct. 18, 2016).

negative 10.  The only warning label is 'Do not have contact with eyes.'  I am telling everyone not to purchase any products.[7]

- I received a car sun visor air freshener as a gift.  I placed i[t] on my passenger visor 2 days ago when I completely washed and waxed my car for the week. Today on my way to work I noticed sparkly gel on my passenger seat...  I used Armor all [sic] leather cleaner wipes as I was driving home to wipe it off and my leather disintegrated in front of my eyes!!!  I am extremely angry!!!  I keep my car in tip top shape!!!  I am very meticulous about my car!!!  I called BBW customer service and they asked for all my information to forward to customer relations!  I may have to wait up to 72 hrs!!!  In my web search I noticed an exact same complaint on this site from a Stephanie in Oct 2013!  Tan leather seats and all!!  I'm furious![8]

29.     Defendant omitted the substantial damage that the Product could cause to consumers' property, including their cars – even when used as directed – and failed to adequately disclose or warn consumers of the likelihood that this type of damage would occur.

30.     Plaintiff and the other members of the Classes did not bargain for a Product that causes substantial property damage in exchange for their payment of the purchase price.  Had they known of the risk of substantial damage to their personal property, Plaintiff and the other members of the Classes would have paid less for the Product or would not have purchased the Product at all.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of herself and on behalf of the following class and subclass (hereinafter, the "Classes"):

---

[7] *July 22, 2015 Complaint from Mary of Fort Collins, CO*, ConsumerAffairs, https://www.consumeraffairs.com/retail/bath_body.html?page=3 (last visited Oct. 18, 2016).

[8] *June 11, 2014 Complaint from Sandra of Redford, MI*, ConsumerAffairs, https://www.consumeraffairs.com/retail/bath_body.html?page=5 (last visited Oct. 18, 2016).

**The Nationwide Class**

All persons in the United States who, during the Class Period, purchased the Product for personal or household use and not for resale.

**The Florida Subclass**

All persons who, during the Class Period, purchased the Product in Florida for personal or household use and not for resale.

32.     Excluded from the Classes are employees or agents of Defendant and its subsidiaries and affiliates, all persons who make a timely request to be excluded from the Classes, and the judge to whom the case is assigned, as well as his or her immediate family. The claims do not include personal injury claims.

33.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis, using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

34.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

35.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members of the Classes is impracticable.  While Plaintiff is informed and believes that there are not less than thousands of members of the Class, the precise number of Class members is unknown to Plaintiff at this time, but may be ascertained from Defendant's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

36.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

12

(a) Whether Defendant's practices and omissions relating to the marketing, labeling, and sale of the Product were unfair, deceptive, fraudulent, and/or unlawful in any respect;

(b) Whether Defendant failed to adequately warn Plaintiff and the other members of the Class of the risks posed by purchasing and using the Product;

(c) Whether Defendant intentionally and/or negligently misrepresented the risks posed by ordinary use of the Product;

(d) Whether Defendant's conduct constitutes unjust enrichment;

(e) Whether Defendant's conduct constitutes a breach of warranty;

(f) Whether Defendant's conduct caused economic injury to Plaintiff and the other members of the Classes; and

(g) Whether Plaintiff and the other members of the Classes are entitled to injunctive and/or declaratory relief.

37. Plaintiff's claims are typical of the claims of other Class members because, among other things, all Class members were comparably injured through the wrongful conduct of Defendant, as described above.

38. Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Classes she seeks to represent. Furthermore, Plaintiff has retained counsel competent and experienced in complex class action litigation. The Classes' interests will be fairly and adequately protected by Plaintiff, who intends to prosecute this action vigorously, and by Plaintiff's skilled and experienced counsel.

39. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Classes as a whole.

40. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

41. Even if Class members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and to the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Express Warranty

42. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

43. Plaintiff brings this claim on behalf of the Nationwide Class.

44. Plaintiff, and each member of the Nationwide Class, formed a contract with Defendant at the time Plaintiff and the other members of the Nationwide Class purchased the Product. The terms of that contract include the promises and affirmations of fact made by

Defendant on its Product packaging and inserts and described through its marketing, as described above. This Product packaging and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the other members of the Nationwide Class, on the one hand, and Defendant on the other.

45.      Plaintiff and the members of the Nationwide Class performed their obligations under the contract.

46.      Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Nationwide Class by omitting material information about the nature of the Product, including any information about the ingredients contained in the Product. Such express warranties breached by Defendant include the representations set forth herein.

47.      As a result of Defendant's breach of its contract, Plaintiff and the Nationwide Class have been damaged in the amount of the purchase price of the Product they purchased.

## COUNT II
### Breach of Implied Warranty

48.      Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

49.      Plaintiff brings this claim on behalf of the Nationwide Class.

50.      Defendant sold the Product in the regular course of business. Plaintiff and the other members of the Nationwide Class purchased the Product.

51.      Defendant, as the manufacturer and/or distributor of the Product, by placing the Product into the stream of commerce, impliedly warranted that the Product was fit for its intended purpose and was of merchantable quality. Defendant did so with the intent to induce Plaintiffs and the Nationwide Class to purchase the Product.

52.      Defendant breached its implied warranties because the Product does not have the characteristics or benefits as promised, as described herein.

53.      As the manufacturer and/or distributor of the Product, Defendant had or should have had actual knowledge of the misrepresentations regarding the Product.  At least dozens of consumers made complaints about the Product to Bath & Body Works and/or ConsumerAffairs, for years before the filing of this Complaint.

54.      Plaintiff and the other members of the Nationwide Class were injured as a direct and proximate result of Defendant's breach because they overpaid for the Product, which they would not have purchased or paid as much for if they had known the true facts that the Product did not have the characteristics, quality, or value as promised and/or if Defendant had properly disclosed the ingredients contained in the Product.

**COUNT III**
**Unjust Enrichment**
**(Brought in the Alternative to the Contract-Based Claims)**

55.      Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

56.      Plaintiff brings this claim on behalf of the Nationwide Class, to the extent the Court determines that there is no adequate remedy at law.

57.      Defendant, through its false or deceptive advertising claims, enticed Plaintiff and the other members of the Nationwide Class to purchase the Product.

58.      Plaintiff and the other members of the Nationwide Class conferred a benefit on Defendant by purchasing the Product.

59.      Upon information and belief, Defendant has profited by failing to disclose the ingredients contained in the Product and by misrepresenting and/or failing to adequately warn

16

purchasers of the negative effects caused by proper use of the Product, thus increasing its sales of the Product to the detriment of Plaintiff and the other members of the Nationwide Class.

60.     By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the members of the Nationwide Class.  Defendant benefitted financially from the revenues and other compensation tied to the sale of the Product.

61.     No adequate remedy at law exists to properly compensate Plaintiff and the other members of the Nationwide Class.

62.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the other members of the Nationwide Class as the result of its deceptive acts and practices.

63.     Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Nationwide Class members is unjust and inequitable, Plaintiff seeks restitution from Defendant and an order from the Court requiring Defendant to disgorge all profits, benefits, and other compensation obtained due to its wrongful conduct.

## COUNT IV
### Negligent Misrepresentation

64.     Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

65.     Plaintiff brings this claim on behalf of the Nationwide Class.

66.     Throughout the Class Period, Defendant made misrepresentations and/or omissions of fact regarding the Product.

67.     Defendant advertised, labeled, packaged, marketed, distributed, and sold the Product without disclosing any of the ingredients contained in the Product and without

adequately warning Plaintiff and the other members of the Nationwide Class of the significant risk to property caused by using the Product as intended.

68.     Defendant was negligent in making the misrepresentations and/or omissions at issue because it knew, or should have known, of the risks of substantial property damage posed by use of the Product.

69.     Plaintiff and the other members of the Nationwide Class relied on Defendant's misrepresentations and/or omissions in purchasing the Product.

70.     The factual misrepresentations and/or omissions committed by Defendant, including Defendant's failure to disclose ingredients contained in the Product, were material to Plaintiff and the other members of the Nationwide Class in making their purchases of the Product.

71.     Plaintiff and the other members of the Nationwide Class relied upon the misrepresentations and/or omissions made by Defendant, to their detriment, in that Plaintiff and the other members of the Nationwide Class paid the purchase price for the Product although they would not have purchased the Product at all or would have paid less for it if they had known the truth about the Product.

72.     Accordingly, Plaintiff and the other members of the Class seek economic damages due to Defendant's negligent misrepresentations.

## COUNT V
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### (Fla. §§ 501.201, *et seq.*)

73.     Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

74.     Plaintiff brings this claim on behalf of the Florida Subclass.

18

75.     Plaintiff and the members of the Florida Subclass are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

76.     Defendant is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

77.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce..." Fla. Stat. § 501.204(1).   Defendant participated in unfair and deceptive trade practices that violated the FDUTPA, as described herein.

78.     In the course of its business, Defendant failed to disclose the ingredients contained in the Product, as well as misrepresented and/or failed to disclose the risks that the Product would leak and that the liquid contained therein would cause substantial damage to personal property, among other things, and otherwise engaged in activities with a tendency or capacity to deceive.

79.     Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Product.

80.     Defendant has known of the defects with the Product for several years, as many publicly-available complaints about the damage caused by Bath & Body Works' Scentportables have been made with ConsumerAffairs.   In addition, various consumer complaints disclose conversations consumers have had about the faulty Products with Bath & Body Works' customer service department ("Customer Service").   Many such complaints also mention that Customer

19

Service personnel referred consumers to Bath & Body Works' insurance provider. Nevertheless, Defendant failed to provide any information on the Product's packaging about the ingredients therein and misrepresented and/or failed to disclose the risk that the Product would leak.

81.     By failing to disclose both information about the ingredients contained in the Product and also the propensity of the Product to cause significant damage to, *inter alia*, consumers' personal property, Defendant engaged in unfair or deceptive business practices in violation of FDUTPA. Defendant withheld information about the ingredients contained in the Product and the likelihood that the Product would leak and cause substantial damage to consumers' property in order to ensure that consumers would purchase the Product.

82.     Defendant's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff and other members of the Florida Subclass, about the true nature of the Product, the quality of Defendant's brand, and the true value of the Product.

83.     Defendant knew or should have known that its conduct violated the FDUTPA.

84.     To protect its profits and to avoid remediation costs and negative press attention, Defendant concealed the risks posed by the Product and allowed unsuspecting consumers to continue purchasing and using the Product.

85.     Defendant's failure to disclose the risks posed by ordinary use of the Product was material to Plaintiff and the other members of the Florida Subclass. Air fresheners made by a reputable company that produces reliable products are worth more than otherwise comparable air fresheners made by a disreputable company that produces defective products, and fails to remedy or warn of known risks with its products.

86.     Defendant was provided notice of these issues by complaints filed with ConsumerAffairs, as well as complaints made to Customer Service, and through information given by dissatisfied consumers to the Company's insurance provider, including as described in this Complaint.

87.     As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and the Florida Subclass members have been damaged in an amount to be proven at trial.

88.     Defendant has failed to provide adequate relief to Plaintiff or members of the Florida Subclass as of the date of filing this Complaint.

89.     Upon information and belief, Defendant has failed to remedy the problems with the Product, despite many complaints made by consumers, thus causing future harm to consumers. Plaintiff, other members of the Florida Subclass, and future purchasers are at risk of real, immediate, and continuing harm if the Product continues to be sold as is, and without adequate warning of the risks.

90.     Moreover, because Defendant's conduct offends established public policy and is substantially injurious to consumers, Defendant should be permanently enjoined from continuing to engage in the unfair and deceptive acts and practices described herein, and should be required to provide complete disclosure of the risks posed by the Product.

91.     Plaintiff also seeks declaratory relief in the form of an order declaring Defendant's conduct to be a deceptive and unfair trade practice in violation of FDUTPA. Moreover, Plaintiff seeks injunctive and equitable relief, putting an end to Defendant's misleading and unfair business practices by requiring Defendant to make full and clear disclosure of the risks of using

the Product and/or requiring Defendant to reformulate the Product so that it no longer poses a risk to consumers' personal property.

**COUNT VI**
**Breach of Implied Warranty of Merchantability**
**(Fla. Stat. §§ 672.314, *et seq.*)**

92.     Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

93.     In the event the Court declines to certify a Nationwide Class, this claim is brought on behalf of the Florida Subclass.

94.     Defendant is and was at all times during the Class Period a "merchant" with respect to air fresheners within the meaning of Fla. Stat. § 672.104(1).

95.     A warranty that the Product was in merchantable condition was implied by law in each transaction involving the Product, pursuant to Fla. Stat. § 672.314.

96.     The Product, when sold and at all times thereafter, was not merchantable or fit for the ordinary purpose for which air fresheners are used. Specifically, it is inherently hazardous in that it easily leaks noxious substances (the ingredients of which are not disclosed on the Product's packaging) that destroy personal property including, *inter alia*, the areas of consumers' vehicles in which it is meant to be used.

97.     Plaintiff and the Florida Subclass, at all times during the Class Period, were the intended third-party beneficiaries of: (a) any contracts between Defendant and vendors who provided components for the Product; and (b) Defendant's sale of the Product to Plaintiff and the other members of the Florida Subclass.

98.     Defendant was provided notice of these issues by its knowledge of the ingredients contained in the Product and the propensity of the Product to melt or leak, prior complaints made

about the serious damage caused by the Product, and referral of consumer complaints to its insurance provider.

99.     As a direct and proximate result of Defendant's breach of the warranties of merchantability and fitness for a particular purpose, Plaintiff and the Florida Subclass have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

A.     Determining that this action may be properly maintained as a class action and certifying Plaintiff as the Class representative pursuant to Federal Rule of Civil Procedure 23;

B.     Permanently enjoining Defendant from continuing to engage in the unlawful acts and practices as alleged herein by addressing the defects in the Product and/or adequately disclosing the risks posed by use of the Product as intended;

C.     Awarding Plaintiff and the Class actual and other damages as applicable to each Count in an amount to be determined at trial;

D.     Awarding Plaintiff and the other members of the Class the costs and expenses of this litigation, including reasonable attorneys' fees, experts' fees, and other costs and disbursements; and

E.     Awarding Plaintiff and the other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: October 20, 2016                    THE WILNER FIRM

                                           Norwood S. Wilner

Richard J. Lantinberg
444 East Duval St., 2nd Floor
Jacksonville, FL 32202
Tel.: (904) 446-9817
Fax: (904) 446-9825
nwilner@wilnerfirm.com
rlantinberg@wilnerfirm.com

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
Janine L. Pollack (*pro hac vice* to be filed)
Correy A. Kamin (*pro hac vice* to be filed)
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
pollack@whafh.com
kamin@whafh.com

*Attorneys for Plaintiff*

/788463

24